**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CORINE MANUEL,

      Plaintiff,

v.                                      CASE NO.: 6:19-cv-346-RBD-LRH

SANTANDER CONSUMER USA INC.,
d/b/a CHRYSLER CAPITAL LLC,

      Defendant.

_____/

## JOINT MOTION TO ARBITRATE AND MEMORANDUM OF LAW

Plaintiff, Corine Manuel ("Plaintiff"), and Defendant, Santander Consumer USA Inc. d/b/a Chrysler Capital LLC ("Defendant") (collectively the "Parties"), by and through their undersigned counsel, jointly move to arbitrate this matter and stay this case pending the outcome of the arbitration, and state as follows:

1.     Plaintiff commenced this action by filing a complaint against Defendant on or about February 21, 2019. [*See* Doc. 1, Complaint.] Plaintiff has alleged that Defendant violated the Telephone Consumer Protection Act ("TCPA") and the Florida Consumer Collection Practices Act ("FCCPA").

2.     Plaintiff's claims are based on allegations that Defendant attempted to collect a debt related to automobile financing provided by Defendant to Plaintiff. Among the financing origination documents is a Vehicle Sentry Protection Agreement ("Agreement"). A true and correct copy of the Agreement is attached as **Exhibit A**.

33174878 v1

3.      The Agreement contains an Arbitration Provision, pursuant to which the Parties agreed to arbitrate disputes between them under the rules of the American Arbitration Association.

4.      In light of this agreement, the Parties seek to arbitrate all of their claims against one another in this matter.

5.      The Parties therefore respectfully request that this Court enter the Agreed Order attached hereto as Exhibit "A," which orders that all of the claims in this lawsuit be submitted to final, binding arbitration and that this lawsuit be stayed pending the outcome of the arbitration.

### MEMORANDUM OF LAW

The Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*  Under federal law, this Court must allow the Parties to arbitrate their claims and should stay this litigation, including all discovery, pending resolution in arbitration.

### A.  The FAA Applies to and Governs the Arbitration Provision.

Through the FAA, Congress "mandated the enforcement of Arbitration Clauses." *Southland Corp.* v, *Keating*, 465 U.S. 1, 10 (1984).  Section 2 of the FAA, the primary substantive provision of the Act, provides that binding arbitration provisions "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1741, 1745 (2011) (quoting *Moses H. Cone Mem'1 Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

33174878 v1

The United States Supreme Court has described Section 2 of the FAA as reflecting both a "liberal federal policy favoring arbitration," *Concepcion*, 131 S. Ct. at 1745, and the "fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2776 (2010). Thus, Arbitration Provisions, like other contracts, are enforceable in accordance with their terms. *Concepcion*, 131 S. Ct. at 1745-46.

Under the FAA, "parties [to an Arbitration Provision] are generally free to structure their Arbitration Provisions as they see fit," and may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989).

Thus, in accordance with the express provisions of the Arbitration Provision, the FAA applies to and governs this matter.

## B. The Arbitration Provision Must Be Enforced Under the FAA.

The purpose of the FAA is "'to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or . . . by state courts or legislatures.'" *Southland Corp.*, 465 U.S. at 13 (citation omitted). Congress passed the FAA "to reverse the longstanding judicial hostility to Arbitration Clauses . . . and to place Arbitration Clauses on the same footing as other contracts . . . ." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Accordingly, under the FAA, written agreements to arbitrate controversies arising out of an existing contract are "valid, irrevocable and enforceable." 9 U.S.C. § 2.

33174878 v1

Arbitration is highly favored for its "simplicity, informality, and expedition." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also Concepcion*, 131 S. Ct. at 1749 (touting arbitration's "streamlined proceedings and expeditious results").

The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Indeed, the FAA "**mandates** that courts shall direct the parties to proceed to arbitration on issues as to which an Arbitration Clause has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 and 4; emphasis added).

Given the strong federal policy favoring arbitration, it is "the party resisting arbitration [which] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph,* 531 U.S. at 91; *see also Gilmer*, 500 U.S. at 26 (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum"). The party opposed to arbitration cannot meet its burden by making "generalized attacks on arbitration that rest on 'suspicion of arbitration.'" *Randolph*, 531 U.S. at 89-90.

Under the FAA, accordingly, courts throughout the country, including the United States Supreme Court, routinely enforce Arbitration Provisions in consumer contracts like the one here. *See*, *e.g*., *CompuCredit Corp. v Greenwood*, 565 U.S. ___, 132 S. Ct. 665 (2012) (credit card agreement); *Concepcion*, 131 S. Ct. 1740 (cell phone services contract); *Buckeye*

4

*Check Cashing*, 546 U.S. 440 (consumer loan agreement); *Randolph*, 531 U.S. 79 (finance

contract for purchase of mobile home); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003)

(home improvement loan); *Dobson*, 513 U.S. 265 (termite protection contract); *Cruz v.*

*Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011) (cell phone services contract); *Scott*

*v. EFN Invs., LLC*, 312 F. App'x 254 (11th Cir. 2009) (consumer sales contract for the

purchase of a vehicle).

   A trial court's role in determining whether a motion to compel arbitration under the

FAA should be granted is limited to a simple two-step inquiry:

-   First, did the parties agree to arbitrate?

-   Second, does the dispute fall within the scope of the arbitration provision?

9 U.S.C. §§ 2, 4; *see, e.g., Bazzle*, 539 U.S. at 451-53.   If the Court determines that the

answer to both questions is "yes," then the FAA requires the Court to enforce the Arbitration

Provision and compel arbitration.  The FAA "leaves no place for the exercise of discretion by

a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to

arbitration . . . ." *Byrd*, 470 U.S. at 218 (emphasis in original).

   The Agreement unquestionably contains a written Arbitration Provision, pursuant to

which the Parties expressed their clear intention to be bound by entering into the Agreement.

Thus, the first prerequisite to enforcement of the Arbitration Provision is satisfied.

   The next question is whether the Parties' claims fall within the scope of the

Arbitration Provision.  In making this determination, it should be noted that any questions or

doubts about the arbitrability of a particular dispute or issue must "be resolved in favor of

arbitration, whether the problem at hand is the construction of the contract language itself or

33174878 v1

an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.   And where the Arbitration Provision is broad, as is the case here, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)).   As set forth below, however, the most important factor in the assessment of the arbitrability of the Parties' claims is that the issue is one for the arbitrator to decide.

> **1.    Any Threshold Dispute Concerning Arbitrability, or the Validity and Enforceability of the Arbitration Provision, Must be Decided by the Arbitrator.**

The Parties delegated the gateway determinations of arbitrability of their claims and the validity and enforceability of the Agreement and Arbitration Provision to the arbitrator. The Parties agreed that any "disagreement" between them would be subject to arbitration. (Ex. A).

Under current law, the delegation of these threshold determinations to the arbitrator bars this Court from considering the validity or enforceability of the Arbitration Provision or whether the Parties' claims are suitable for arbitration.

In 2010, the U.S. Supreme Court reconfirmed the rule for determining who – between a court and an arbitrator – decides whether the claim must be arbitrated (i.e., arbitrability) and challenges to the validity and enforceability of an agreement to arbitrate.  *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010).  Typically, whether parties have an enforceable

Arbitration Provision covering their dispute is an issue the court must decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296-97 (2010); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002).   However, where parties enter into an Arbitration Provision containing a delegation provision which vests in an arbitrator the authority to determine of the validity and enforceability of the Arbitration Provision and issues of arbitrability, those threshold issues must be compelled to arbitration along with the underlying dispute. *See Rent-A-Ctr.*, 561 U.S. at 67-71.

In *Rent-A-Center*, the United States Supreme Court recognized the right of parties to "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69 (citing *Howsam*, 537 U.S. at 83-85); *see also Bazzle*, 539 U.S. at 452.   To be enforceable, such delegations are subject to a heightened standard: the parties' intent to arbitrate the issue of arbitrability must be demonstrated by "clear and unmistakable evidence." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted).   In the presence of a clear and unmistakable delegation clause, unless a party specifically and discretely challenges the delegation of authority to the arbitrator, any challenge to the validity or enforceability of the entire Arbitration Provision (much less any challenge to the validity of the overarching contractual agreement) is subject to arbitration and must be left for the arbitrator to resolve. *Rent-A-Ctr.*, 561 U.S. at 70-72; *see also ATP Flight Sch., LLC v. Sax*, 44 So. 3d 248, 252-53 (Fla. 4th DCA 2010). Accordingly, where a court concludes that the parties expressly delegated authority to determine the validity and enforceability of the Arbitration Provision to an arbitrator, the court must refer the matter to arbitration on the gateway issues relating to

33174878 v1

enforceability and arbitrability along with the underlying dispute.  *See Rent-A-Ctr.*,561 U.S. at 68-72.

Therefore, because the Parties delegated the threshold determination of arbitrability to an arbitrator, this Court should refer any questions regarding the enforceability of the Arbitration Provision or its application to the Parties' claims to the arbitrator.

**C.  These Proceedings Must be Stayed Pending Resolution of the Parties' Claims in Arbitration.**

Once it is determined that the claims asserted in a pending court action are subject to an Arbitration Provision, the FAA mandates that the action on the claims be stayed pending arbitration of the claims.  *See* 9 U.S.C. § 3.  Section 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  As the United States Supreme Court has made clear, "state courts, [and] federal courts, are obliged to grant stays of litigation under § 3 of the [FAA]."  *Moses H. Cone*, 460 U.S. at 26.  Because all of the claims at issue in this litigation are subject to arbitration, this litigation should be stayed while the claims are arbitrated.  *See, e.g.*, *Kyer* v. *Teen Challenge of Fl., Inc.,* Case No. 8:07-cv-1824-T-23-TBM, 2008 WL 1849024, at *2 (M.D. Fla. April 24, 2008) (granting motion to compel arbitration and staying the proceeding); *Flach v. Clarendon Nat'l Ins. Co.*, Case No. 804-CV-49T-17MSS, 2004 WL 5042294 (M.D. Fla. April 8, 2004) (granting Defendant's Motion to Stay Litigation and to Compel Arbitration).

## CONCLUSION

The Agreement requires the arbitration of disputes between the Parties.  The Federal Arbitration Act therefore requires this Court to stay the proceedings relating to the Parties' claims, including all discovery, and refer this matter to arbitration.

WHEREFORE, the Parties respectfully request that this Court enter the Agreed Order attached hereto as Exhibit "B," which refers this matter to arbitration and stays the instant litigation pending the outcome of the arbitration.

Respectfully submitted this 2nd day of April, 2019.


| | |
|---|---|
| *s/ Octavio Gomez* | */s/ Gennifer L. Bridges* |
| Octavio Gomez | R. Frank Springfield |
| Florida Bar No. 0338620 | Florida Bar No. 0010871 |
| MORGAN & MORGAN, TAMPA, P.A. | Gennifer L. Bridges |
| 201 N. Franklin Street, Suite 700 | Florida Bar No. 0072333 |
| Tampa, Florida 33602 | BURR & FORMAN LLP |
| Telephone: (813) 223-5505 | 200 S. Orange Avenue, Suite 800 |
| Facsimile: (813) 223-5402 | Orlando, Florida 32801 |
| tgomez@forthepeople.com | Telephone: (407) 540-6600 |
| ldobbins@forthepeople.com | Facsimile: (407) 540-6601 |
| | fspringf@burr.com |
| Attorney for Plaintiff | gbridges @burr.com |
| CORINE MANUEL | |
| | Attorneys for Defendant |
| | SANTANDER CONSUMER USA, INC. |


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of April, 2019, I filed a true and correct copy of the foregoing via the CM/ECF service, which will provide electronic notification to the following counsel of record:

33174878 v1

Octavio Gomez
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
tgomez@forthepeople.com
ldobbins@forthepeople.com

/s/ Gennifer L. Bridges
Gennifer L. Bridges (FBN 0072333)

33174878 v1

| ETCH NUMBER | DEAL NUMBER 130376 | | | VSP |
|---|---|---|---|---|
| CT3620905 | *VEHICLE SENTRY PROTECTION™ AGREEMENT* | | Automotive Warranty Services Of Florida, Inc: | |

**VEHICLE SENTRY PROTECTION™ AGREEMENT**
For New And Used Vehicles

**AGREEMENT#** VFL- **133600**   **PIP MEMBER #**

**INFORMATION SCHEDULE**

Automotive Warranty Services Of Florida, Inc:
175 West Jackson Blvd.
Chicago, Illinois 60604
Florida License # 60023

| DEALER'S NAME: | NAPLETON'S CLERMONT CJD | AGREEMENT DATE: | 12/04/2013 |
|---|---|---|---|

| DEALER'S ADDRESS: | 15859 STATE ROAD 50 | CLERMONT | FL | 34711 |
|---|---|---|---|---|
| | STREET ADDRESS | CITY | STATE | ZIP CODE |

| CUSTOMER'S NAME: | CORINE | MANUEL | |
|---|---|---|---|
| | LAST NAME | FIRST NAME | INITIAL |

| CUSTOMER'S ADDRESS: | 1201 FERNDELL RD | ORLANDO | FL | 32808 |
|---|---|---|---|---|
| | STREET ADDRESS | CITY | STATE | ZIP CODE |

| CUSTOMER'S PHONE: | ███████-7062 | | | |
|---|---|---|---|---|
| | AREA CODE  DAY PHONE | AREA CODE | NIGHT PHONE | |

| VEHICLE INFORMATION: | CHRYSLER | 2012 | 200 | ███████0079 | 27230 |
|---|---|---|---|---|---|
| | MAKE | YEAR | MODEL | SERIAL NUMBER | MILEAGE |

| CUSTOMER'S E-MAIL: | corine████████ HOME | | |
|---|---|---|---|
| | | AGREEMENT CHARGE: $ | 369.00 |

| LIENHOLDER: | CHRYSLER CAPITAL | PO BOX 961272  FT. WORTH | TX | 76161 |
|---|---|---|---|---|
| | NAME | ADDRESS | | |

## INDICATE YOUR PLAN AND TERM CHOICE BY CHECKING ONE BOX ON EACH LINE:

☐ **3 YEAR TERM**          ☐ **5 YEAR TERM**

☐ **STANDARD PROTECTION PLAN**
(up to $2,500)

☐ **SECURED WORTH PLAN**
(up to $5,000)

☐ **SECURED WORTH PLAN**
(up to $7,500)

**RENTAL CAR REIMBURSEMENT APPLIES TO ALL PLANS**

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE SELECTED THE TERM AND PLAN INDICATED ABOVE, HAVE READ AND UNDERSTAND ALL SECTIONS OF THIS AGREEMENT, AND YOU AGREE TO PAY THE AGREEMENT CHARGE STATED ABOVE. I UNDERSTAND THAT THE PURCHASE OF THE VSP™ PRODUCT (INCLUDING THE AGREEMENT BELOW) IS NOT REQUIRED AS A CONDITION OF OBTAINING FINANCING ON OR FOR PURCHASING THIS VEHICLE. THE RATE CHARGED FOR THE AGREEMENT IS NOT SUBJECT TO REGULATION BY THE FLORIDA OFFICE OF INSURANCE REGULATION.

| _(signature)_ | 12/04/2013 | _(signature)_ | 12/04/2013 |
|---|---|---|---|
| CUSTOMER'S SIGNATURE | DATE | AUTHORIZED DEALER SIGNATURE | DATE |

## Agreement

This form describes the protection You will have under Your Vehicle Sentry Protection™ ("VSP™") Agreement (hereafter referred to as "Agreement"). In return for payment by You of the Agreement Charge and subject to all the terms of this Agreement, Automotive Warranty Services of Florida, Inc. (hereafter referred to as "AWSFL") agree with You as follows:

**I. DEFINITIONS:**
**Agreement Date** shall refer to the date You purchased this Agreement.
**You** and **Your** shall refer to the AWSFL customer who signs and is listed on the Information Schedule of this Agreement.
**Vehicle** shall refer to the new or used automobile, truck, or van listed on the Information Schedule of this Agreement.
**Replacement Vehicle** shall refer to the vehicle You purchase or lease under the terms of this Agreement as a replacement for Your Vehicle. The Replacement Vehicle must be at least the same year, make and model with similar factory and aftermarket options as Your Vehicle as of the date of this Agreement.
**Dealer** shall refer to the provider of VSP™ listed on the Information Schedule of this Agreement and shall be a nationally franchised seller of automobiles, trucks and vans.
**Term** shall refer to the period of time that this Agreement shall be in effect from the Agreement Date until the earlier of the expiration of the Term as selected by You on the Information Schedule of this Agreement or until AWSFL has made a claim payment under this Agreement.

**II. EXTENT OF THIS AGREEMENT:**
AWSFL agrees that when the Vehicle Sentry Protection™ Product ("VSP™") is properly and professionally applied to, or installed on Your Vehicle, then if VSP™ fails to deter the theft of Your Vehicle and if all the provisions of this Agreement are satisfied, AWSFL will pay You the Vehicle Sentry Protection expenses indicated below towards Your purchase or lease of a Replacement Vehicle:

**Secured Worth Plan**
When the Secured Worth Plan box has been checked on the Information Schedule, the following Vehicle Sentry Protection expenses are covered:

| **SECURED WORTH PLAN** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *(amounts computed using this table are subject to the limit selected by You on the Information Schedule of this Agreement)* | | | | | | | | |
| **PURCHASED VEHICLE:** | A | plus | (B | plus | C | minus | D) | . |
| **LEASED VEHICLE:** | A | plus | (F | plus | C | minus | D) | |

DOC # VFL110625

**EXHIBIT A**

**Standard Protection Plan**

When the Standard Protection Plan box has been checked on the Information Schedule, the following Vehicle Sentry Protection expenses are covered:

| STANDARD PROTECTION PLAN | | |
|---|---|---|
| **PURCHASED VEHICLE:** | A plus | E |
| **LEASED VEHICLE:** | A plus | E |

**Vehicle Sentry Protection Expense Calculation Variables**

A - Rental car reimbursement shall refer to rental car expense, not to exceed $500.00 for Secured Worth Plan or not to exceed $250.00 for the Standard Protection Plan; that You must directly pay out-of-pocket, in excess of any amounts paid to You or on Your behalf under Your comprehensive insurance coverage, to a rental car company following the theft of Your Vehicle. Rental car reimbursement will not be paid to You unless Your Agreement claim results in a payment by AWSFL for an approved Agreement claim.

B - Replacement vehicle cost shall be the sales price of Your Replacement Vehicle, not to exceed the Manufacturer's Suggested Retail Price ("M.S.R.P."), plus sales tax, title, fees, and other aftermarket costs of a non-manufacturer origin. If at the date of application or installation of VSP™, Your Vehicle is a used Vehicle (a vehicle with an odometer reading of over 24,000 miles, or more than 2 model years old, or registered or licensed to a previous purchaser), the replacement vehicle cost shall be the retail value listed for Your Vehicle in the National Automobile Dealer Association ("N.A.D.A") Official Used Car Guide published in the calendar quarter of the year You signed this Agreement and shall cover the geographical region in which You obtain Your Replacement Vehicle.

C - Your deductible applicable to Your comprehensive insurance coverage.

D - Value of Your Vehicle as determined by Your comprehensive insurance company at time of theft.

E - Up to $2,500.00 for: Your deductible applicable to Your comprehensive insurance coverage; increased financing costs, food, travel & lodging expenses incurred due to theft of Your Vehicle, sales tax, title, fees, and other aftermarket costs of a non-manufacturer origin, the sales price of Your Replacement Vehicle not to duplicate any benefits or expenses paid to You by Your comprehensive insurance company for the theft of Your Vehicle, lost wages, consequential expenses (including time spent by You in dealing with the theft of Your Vehicle, reporting the theft to the police, locating Your Replacement Vehicle, and dealing with Your Insurer), and other expenses directly related to the theft of Your Vehicle.

**LEASE ONLY**

F - The amount You would owe under Your lease agreement in the event of the theft of Your stolen Vehicle plus the amount necessary to reduce the gross capitalized cost of the REPLACEMENT Vehicle to produce a monthly lease payment and term (total number of payments) identical to the monthly lease payment and term of Your Vehicle.

**III. EXCEPTIONS TO THIS AGREEMENT:**
THIS AGREEMENT DOES NOT APPLY TO THEFT UNDER THE FOLLOWING CONDITIONS:
A) If Your Vehicle is recovered within thirty (30) days of the date of theft, and is not ruled a constructive total loss (i.e. "totaled") by Your insurer.
B) When Your insurer providing comprehensive insurance for Your Vehicle has not yet paid, or refuses to pay, any monies for the theft of Your Vehicle.
C) If You have not submitted to AWSFL prior to ninety (90) days from the insurance settlement date the information referred to in Section VI. Claims Procedure.

**IV. LIMITATIONS ON AWSFL's LIABILITY:**
AWSFL's MAXIMUM LIABILITY UNDER THE VEHICLE SENTRY PROTECTION™ AGREEMENT IS EXPRESSLY LIMITED TO THE PAYMENT OF THE AGREEMENT CLAIM CALCULATED PURSUANT TO THE TERMS OF THIS AGREEMENT (UP TO) THE DOLLAR AMOUNT SELECTED BY YOU ON THE INFORMATION SCHEDULE OF THIS AGREEMENT. AWSFL SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, AND ALL DAMAGES RECOVERABLE UNDER THIS AGREEMENT ARE LIMITED TO THE AMOUNTS STATED IN THIS AGREEMENT.

**V. REQUIREMENTS FOR THIS AGREEMENT TO BECOME EFFECTIVE:**
A) Your signature on the Information Schedule of the Agreement.
B) You obtain and maintain continuously, comprehensive insurance coverage on Your Vehicle for the "Actual Cash Value" of Your Vehicle throughout the Term.

**VI. CLAIMS PROCEDURE:**
Within ninety (90) days of the insurance settlement date, You provide to AWSFL, by Certified Mail, Return Receipt Requested:
1) A copy of Your Agreement;
2) A copy of the police report that was filed within ten (10) days of the date of theft;
3) A copy of the settlement check(s) from Your comprehensive insurance company for the theft of Your Vehicle;
4) A copy of the Vehicle purchase or lease agreement;
5) A copy of the Replacement Vehicle purchase or lease agreement;
6) A copy of the receipts for the expenses listed in variable E under Section II. Scope Of This Agreement, and
7) A copy of Your rental car agreement, if any.

**VII. PAYMENT ON AGREEMENT CLAIM:**
AWSFL's payment for an approved Agreement claim shall be made within forty-five (45) days after You have satisfactorily met the requirements listed in Section VI. Claims Procedure. Any AWSFL payment under this Agreement will satisfy all obligations owed by AWSFL to You, release AWSFL from any liability under this Agreement, and cause this Agreement to expire. PAYMENTS BY AWSFL SHALL NOT DUPLICATE ANY BENEFITS OR EXPENSES PAID TO YOU BY YOUR COMPREHENSIVE INSURANCE COMPANY FOR THE THEFT OF YOUR VEHICLE.

**VIII. ARBITRATION:**
In the event of a disagreement between You and AWSFL concerning this Agreement, the disagreement will be settled by nonbinding arbitration through the American Arbitration Association ("AAA") and its rules for arbitration then in effect. You and AWSFL agree that this provision will be a complete defense to any law suit, class action, or other proceeding filed in any federal, state, or local court with respect to any issue or matter arising under this Agreement.

**IX. OTHER PROVISIONS:**
REIMBURSEMENT INSURANCE POLICY: AWSFL obligations under this Agreement are insured under a reimbursement insurance policy. If a payment for an approved warranty claim is not provided by AWSFL before the 61st day after You have satisfactorily met the requirements listed in Section VI. Claims Procedure, You may apply for reimbursement directly to the reimbursement insurer company: Virginia Surety Company, Inc., 175 West Jackson Blvd., Chicago, Illinois 60604, 800.209.6206.

MISREPRESENTATION AND FRAUD: This Agreement shall be void if You have concealed or misrepresented any material fact or circumstance relating to this Agreement or the subject thereof, whether before or after a loss. This includes, but is not limited to, any dishonest, fraudulent, or criminal act by You or anyone acting in any capacity as Your agent, whether direct or indirect, which causes or contributes to the theft of Your Vehicle.

GUARANTEE ASSOCIATION NOTICE: under the Provisions provided to You by this Agreement, You may not make a claim against the Florida Insurance Guarantee Association for the expenses that this Agreement is to cover.

TRANSFER OPTION: This Agreement is transferable to a second owner of Your Vehicle subject to AWSFL's approval, providing the second owner notifies AWSFL of the request of transfer within thirty (30) days of the date of sale. Transfer fee of $40.00 will apply. contact AWSFL for transfer procedures.

COMPUTATION OF TIME: All time periods stated in this Agreement shall be computed by beginning the count on the day of the specified event.

CANCELLATION: You may cancel this Agreement at any time. To cancel, You must mail this Agreement to AWSFL, or provide written notice to AWSFL. If You cancel this Agreement within sixty (60) days from the Agreement Date, You will receive a 100% refund of the Agreement Charge. If You cancel this Agreement after sixty (60) days, a pro-rata refund will be made based upon the days in force compared to the total time of Your Agreement Term, less an administrative fee of $50 or 10 percent of the refund amount, whichever is less. All refunds will be paid to You or to the lien holder if applicable. AWSFL may cancel this Agreement for any reason within sixty (60) days of the Agreement Date. After sixty (60) days, AWSFL may cancel this Agreement if there has been a material misrepresentation or fraud at the time of sale of this Agreement, or if You do not pay the Agreement Charge. If AWSFL cancels this Agreement, You will receive 100% of the paid unearned pro-rata premium. All refunds will be paid to You or to the lien holder if applicable. If this Agreement is financed, and Your Vehicle is a total loss or is repossessed, or is deemed by Your comprehensive insurance carrier to be a total loss due to an event unrelated to the theft of Your Vehicle, You authorize Your lien holder to cancel this Agreement and receive the refund.

ENTIRE AGREEMENT: THIS AGREEMENT REPRESENTS THE ENTIRE AGREEMENT BETWEEN AWSFL AND YOU, AND CANNOT BE MODIFIED OR ENLARGED IN ANY WAY EXCEPT IN WRITING BY AWSFL. THE ONLY INDIVIDUALS AUTHORIZED TO BIND AND SPEAK FOR AWSFL ARE THOSE LOCATED AT THE ADDRESS BELOW. THE VSP™ DEALER IS NOT AUTHORIZED TO EXTEND OR IN ANY MANNER MODIFY THE TERMS AND CONDITIONS OF THIS AGREEMENT, OR RECEIVE DOCUMENTS, CORRESPONDENCE, OR NOTICES ON BEHALF OF AWSFL. FOR QUESTIONS REGARDING YOUR AGREEMENT:

CONTACT AWSFL AT: 175 West Jackson Blvd. • Chicago, Illinois 60604 • (800) 341-3682

WHITE – HOME OFFICE • WHITE – AWSFL • YELLOW - DEALER • PINK – CUSTOMER   © 2002 - 2011 Automotive Warranty Services of Florida, Inc

DOC # VFL110625

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CORINE MANUEL,

      Plaintiff,

v.                                 CASE NO.: 6:19-cv-346-RBD-LRH

SANTANDER CONSUMER USA INC.,
d/b/a CHRYSLER CAPITAL LLC,

      Defendant.

_____/

**AGREED ORDER STAYING CASE PENDING ARBITRATION**

Pursuant to agreement of the Plaintiff, Corine Manuel, and Defendant, Santander

Consumer USA Inc. d/b/a Chrysler Capital LLC (collectively, "Parties"), it is hereby

ORDERED and ADJUDGED that:

1.      The Parties will advance their claims against one another as provided for in

the governing Arbitration Agreement.

2.      This case is stayed until the resolution of the arbitration.

DONE and ORDERED this _____ day of _____, 2019.

                                      _____

                                      HON. LESLIE R. HOFFMAN
                                      MAGISTRATE JUDGE

Copies to:
Octavio Gomez                      R. Frank Springfield
MORGAN & MORGAN, TAMPA, P.A.    Gennifer L. Bridges
201 N. Franklin Street, Suite 700       BURR & FORMAN LLP
Tampa, Florida 33602              200 S. Orange Avenue, Suite 800
tgomez@forthepeople.com         Orlando, Florida 32801
ldobbins@forthepeople.com        fspringf@burr.com, gbridges@burr.com
Attorney for Plaintiff               Attorneys for Defendant

AGREED AS TO FORM AND CONTENT:

*s/ Octavio Gomez*       *s/ R. Frank Springfield*

Octavio Gomez        R. Frank Springfield
MORGAN & MORGAN, TAMPA, P.A. Florida Bar No. 0010871
201 N. Franklin Street, Suite 700   Gennifer L. Bridges
Tampa, Florida 33602      Florida Bar No. 0072333
Telephone: (813) 223-5505    BURR & FORMAN LLP
Facsimile: (813) 223-5402     200 S. Orange Avenue, Suite 800
tgomez@forthepeople.com    Orlando, Florida 32801
ldobbins@forthepeople.com    Telephone: (407) 540-6600
             Facsimile: (407) 540-6601
Attorney for Plaintiff      fspringf@burr.com
CORINE MANUEL       gbridges_@burr.com

             Attorneys for Defendant
             SANTANDER CONSUMER USA INC.

33181682 v1